JONES *et al. vs.* McCLEOD *et al.*

1. Executions against A. administrator of B., with no direction to levy of the goods, etc., of B., are against A. personally, and not against the estate of B. And the presumption is, that the judgments are to the same effect    59 *Ga.*, 706.

2. Before a creditor having judgment against an intestate can seek satisfaction out of purely equitable assets in the hands of a stranger, it must appear that the estate is otherwise insufficient, not simply that " no property of the estate can now be found;" that is, at the time of filing the bill.    There being an administration alleged, there should be some reason shown why payment cannot be had by resorting to the administrator.

3. The creditor of a decedent, having no other resource for the collection of his money, may call to account in equity, one who has, since the debtor's death, taken the rents and profits of land conveyed by voluntary deed made to defraud creditors, such conveyance having been made by the debtor in his lifetime, and the person sought to be charged having derived his pretended title to the premises from the fraudulent grantee with notice of the fraud.

4. Where, after the death of a debtor, certain of his personal property was taken possession of by a stranger, and on his death was taken possession of by his executor, who converted it to his own use, the right of action therefor is in the administrator of the debtor, and creditors cannot maintain a bill for an account against the second wrong-doer, without showing some good reason why they sue instead of the administrator.

Executions.    Administrators and executors.    Debtor and creditor.    Equity.    Fraudulent conveyance.    Parties.    Before Judge TOMPKINS.    Emanuel Superior Court.    April Term, 1878.

McCleod and others, who alleged themselves to be judgment creditors of the estate of Kirkland, deceased, filed their bill against the Kirklands, as administrators, and Jones, making, in substance, this case :

Kirkland died in the year 1868, seized and possessed of certain personalty and a tract of land.    Before there was any administration upon his estate, one Malcom D. Jones took possession of all of said property under some pretended claim.    He died in 1869, and soon thereafter the defendant,

Francis A. Jones, as his executor, sold said land at public outcry, himself becoming the purchaser at a nominal sum. He took possession of all of the personalty, and also of said land, claiming the latter under such sale.

A short time before his death, Kirkland conveyed said land to said Malcom D., for no consideration whatever, for the purpose of defrauding his creditors. At the time of the execution of the deed, Kirkland was advanced in years and of infirm health. He was being pressed by his creditors, and under the influence of the said Malcom D., who was a shrewd, capable lawyer, and his legal adviser and confidential friend, he made the deed. This was not done for the purpose of conveying title to said Jones, but to protect the said Kirkland in the possession and use of the land. All of these facts were perfectly familiar to the defendant, Jones, yet he nevertheless took possession of said land at the close of the year 1869, and so remained until and during the year 1874. Administration was granted on the estate of Kirkland to the defendants, Kirklands, who brought their bill against the defendant, Jones, to cancel the said deed and to recover the land, with the rents and profits thereof, for the benefit of the creditors and heirs of the estate. To this proceeding a demurrer was filed, and the chancellor held, that notwithstanding the facts alleged, equity would not interfere at the instance of the administrators, but that the creditors of the estate could enforce their demands against the land, notwithstanding the pretended claim of title under which the defendant Jones held.

Subsequently an execution in favor of Grubbs against Kirkland, deceased, based upon a judgment obtained intermediate the date of the deed and his death, was levied upon the land, and a claim was filed thereto by the defendant Jones. The property was found subject, sold, and the proceeds applied to said execution.

No property of the estate of Kirkland, deceased, can now be found. His personalty, aggregating in value $1,050.00, has been taken possession of by the defendant,

Jones, and applied to his own use. The rents and profits of the land, of the annual value of $1,000.00, for the five years aforesaid, have also been appropriated by said Jones. The personalty and rents were assets of the estate of Kirkland, deceased, and should have been applied to the payment of the claims of complainants, which now amount to $6,000.00.

Waiving discovery, the complainants pray that the defendant, Jones, may be decreed to pay over to them said $6,050.00, with interest, to be applied to their judgments; that the writ of subpœna may issue.

Eight executions were attached to the bill as exhibits. Seven of them were against the Kirklands, administrators, with no direction to levy the same of the goods, etc., of the intestate; one was against the intestate himself, the judgment having been obtained during his life.

A demurrer was filed by Jones upon the ground that there was no equity in the bill, and that complainants had an adequate remedy at law. The demurrer was overruled, and Jones excepted.

CORKER & PALMER; CAMP & LIVINGSTON, for plaintiff in error, cited 39 *Ga.*, 132; 4 *Ib.*, 323, 519; 5 *Ib.*, 339; 35 *Ib.*, 172; Code, §§ 2448, 2485; 9 Cow., 728; 48 *Ga.*, 156, 421; 19 *Ib.*, 293; 18 *Ib.*, 108; 38 *Ib.*, 264; Code, § 2441.

H. D. D. TWIGGS; R. W. CARSWELL, for defendants, cited 21 *Ga.*, 251; 41 *Ib.*, 260; 43 *Ib.*, 583; Code, §3172.

BLECKLEY, Justice.

1. There is a special ground on which seven of the executions are impotent to travel through this litigation. They are against Kirkland's administrators personally, and not against them in their representative capacity. They contain no direction for levying upon the property of the intestate. They are final process against the property of the administrators. The presumption is, that the judgments

on which they are founded, are also against the administrators, personally, and do not charge the estate which the administrators represent; for executions are presumed to conform to the judgments from which they issued. 59 *Ga.*, 706. We rule on these documents in their actual state, and not as they may possibly hereafter become by amendment, for it is not alleged that they are otherwise than as they ought to be, or that the administrators are personally insolvent. Neither is it alleged that the administrators are not under a good and sufficient bond to answer to creditors for any *devastavit* which they may have committed. These seven executions may be dropped at this point in the present opinion; for if the substance of what follows was applicable to them, as well as to the remaining execution, it is the latter alone which renders it necessary to rule at all upon more than the one obstacle in the complainants' path.

2. The execution against the intestate himself is now to be dealt with, and its relation to each of the two classes of assets mentioned in the bill must be examined. These assets are, first, the rents and profits of the land; and, secondly, the claim against Francis A. Jones for the personalty alleged to have been converted by him. It is to be noticed that the land itself is not sought to be reached by the bill, as it has heretofore been condemned and sold as the property of Kirkland, the intestate, at the suit of one of his creditors. First, then, as to the rents and profits. Grant that they are assets at all for the payment of the execution, to what class of assets do they belong, legal or equitable? The land was voluntarily conveyed by Kirkland to defraud his creditors. The conveyance was to Malcom D. Jones, who prompted and participated in the fraud. Both died, and the defendant Francis A. Jones, with notice of the fraud, and being the executor of Malcolm D., sold the land as such executor, and purchased it himself. He held possession under this pretended title from 1869 till 1874, and the rents and profits during this period are the rents and profits in question.

Kirkland died in 1868, and having parted with the title to the land before his death, the legal title to these rents and profits never was in him or his administrators. As his conveyance of the land was fraudulent, his creditors could pursue the land at law, for the title to *that* was once in him, and being once in him, could not pass out by a fraudulent conveyance, so as to defeat their right to levy upon and sell it. But it could and did pass out, so as to prevent any title from ever vesting in him or his administrator to the future rents and profits. For these to be subject to the demands of creditors, there would have to be special circumstances, such as insolvency, rendering it necessary for creditors to resort to them to avoid loss. In other words, equitable principles would have to be invoked, so as to enable a court to say that though, in strict law, these rents and profits are not and never have been in Kirkland or his administrators, yet the land which Kirkland threw away produced them, and his creditors will suffer unless they are collected in and applied to his debts, wherefore, the court will aid in collecting and so applying them. If, as the bill insists, the rents and profits do not belong to Francis A. Jones, his liability for them is in the nature of a trust; or if of a debt, it is equitable, not legal, for the conclusive reason that no mere legal remedy ever could reach them. Were Kirkland alive he could not recover them anywhere; his administrators, now that he is dead, cannot recover them anywhere; and his creditors cannot recover them by a mere action or process at law. It follows that, at most, they are but equitable assets for the satisfaction of creditors. The bill shows no sufficient reason why it is necessary or proper to resort to them. That "no property of the estate can now be found," is not an allegation of insolvency. Perhaps the reason that none can be found is, that the administrators have wasted it. It does not appear that payment cannot be realized by pursuing the administrators. Have they done their duty? and must the creditors nevertheless suffer if these rents and profits are not accounted for by Jones?

3. Anticipating that the actual facts may probably war-
rant some amendment to the bill, and intending to direct
by our judgment that opportunity to amend be afforded, we
will not leave the question undecided as to whether, with the
proper averments, the rents and profits can be reached. We
think they can be. If the creditor has no other resource for
the collection of his money, he may call the defendant
Jones to an account, to the extent of what may be neces-
sary to satisfy the execution. The land of the debtor, whilst
in the possession and use of a fraudulent holder of the legal
title, may, as to creditors who were defrauded by the debtor's
conveyance, be treated as a trust fund, and the rents and
profits may be treated as the produce of that fund. It seems
to us that it is a thousand times more equitable to saddle,
in this way, a trust upon the rents and profits, than for cred-
itors to go unpaid. And if resort to this means of satisfac-
tion be allowed only in cases of absolute necessity, the re-
ceiver of the rents and profits, who took his title, or pre-
tended title, with notice of the fraud, has no reason what-
ever to complain. It is treating him quite as leniently as he
has any just right to expect. He is made a trustee to pre-
vent injustice, not to the fraudulent grantor, his heirs or
representatives, but to the innocent creditors of the grantor.
And to prevent the grantor's esttae from being benefited
even indirectly, all its means of payment are first to be ex-
hausted.

4. The remaining question appertains to the other class
of assets sought to be reached by the bill, namely : the claim
for personal property converted by the defendant Jones to
his own use. It will be observed that the bill does not al-
lege that this property was transferred by Kirkland in his
lifetime. On the contrary, the charge is, that it was taken
possession of after Kirkland's death, by Malcom D. Jones,
and, after the death of the latter, by the defendant Francis
A. Jones, his executor, and was, by Francis A. Jones, con-
verted to his own use. These facts make a case for an ac-
tion of trover in favor of the administrators of Kirkland

against Jones. Why should the creditors proceed by bill in equity? There is no allegation that the administrators have been requested to sue, or that they have refused; nor is any other reason shown why the creditors should take it upon themselves to demand redress for this mere tort. We think the demurrer to the bill should have been sustained; but in reversing the judgment by which it was overruled, we direct that the complainant have leave to amend as they shall be advised, provided that the amendment be made on or before entering the remittitur in the superior court.

Judgment reversed.